UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HUMBERTO RESTREPO, as Chairman of the Joint
Industry Board of the Electrical Industry,

Petitioner,

-against-

RICHMOND ELECTRIC INC.,

Respondent.

24 CV _____

**PETITION TO
CONFIRM AN
ARBITRATION AWARD**

Petitioner, Humberto Restrepo, as Chairman of the Joint Industry Board of the Electrical Industry ("Petitioner" and/or the "JIB") by and through his attorneys, Virginia & Ambinder, LLP ("V&A"), as and for his Petition to Confirm an Arbitration Award, respectfully alleges as follows:

## NATURE OF THE ACTION

1.       This is an action under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3); section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to confirm and enforce an Arbitrator's Award rendered pursuant to a collective bargaining agreement (the "CBA") between Local Union #3 of the International Brotherhood of Electrical Workers ("Union") and Richmond Electric Inc. ("Respondent").

## JURISDICTION AND VENUE

2.       This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

3.       Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA Plans (as defined below) are administered in this district.

## THE PARTIES

4.      Petitioner is the Chairman of the Joint Industry Board, the administrator of various employee benefit multi-employer plans established and maintained pursuant to a collective bargaining agreement between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO, and certain employer associations and independent or unaffiliated employers in the electrical and other related industries.  The Joint Industry Board maintains its principal place of business at 158-11 Harry Van Arsdale Jr. Avenue, Flushing, New York 11365.

5.      Dr. Gerald Finkel retired from his position as Chairman of the Joint Industry Board of the Electrical Industry on or about July 1, 2023.

6.      Mr. Humberto Restrepo assumed the position of Chairman of the Joint Industry Board of the Electrical Industry on or about July 1, 2023.

7.      The Joint Industry Board ("JIB") is the administrator and fiduciary within the meaning of §§ 3(16)(A)(i) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A)(i) and 1002(21)(A), of each of the following employee benefit plans: the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, the Health Reimbursement Account Plan of the Electrical Industry, the Deferred Salary Plan of the Electrical Industry (the "DSP"), the Joint Apprenticeship and Training Program (the "JATP"), and the National Electrical Benefit Plan ("NEBF")(collectively the "ERISA Plans").

8.      Per the operative collective bargaining agreement, the JIB receives directly from each signatory employer a weekly remittance consisting of contributions to each of the ERISA Plans, except the DSP, as well as a Union assessment collected by the signatory employer from

each Union member employed (the "Union Assessment").  The JIB acts as a mere collection agent with respect to the Union Assessment and NEBF contribution.

9.      Each of the ERISA Plans is an employee benefit multiemployer plan within the meaning of §3(3) of ERISA, 29 U.S.C. 1002(3), and a multi-employer plan within the meaning of 3(37) of ERISA, 29 U.S.C. § 1002(37). Each of the ERISA Plans is also jointly administered by a board of trustees that is comprised of labor and management representatives who share equal representation in the administration of the Plans in accordance with 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

10.     The DSP is also a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of Section 401(k) of the Internal Revenue Code (the "Code"). Pursuant to the operative collective bargaining agreement, employers are required to deduct a specified percentage from the weekly wages of each eligible employee covered by the operative collective bargaining agreement and to remit such amounts, plus any additional salary deferrals made at the election of the employee together, ("Employee Contributions") to the DSP, along with related payroll reports.  The Employee Contributions are employee-elective contributions, which, but for the salary deferrals, would have been paid to the employees as wages. Employers are also required to remit employer contributions to the DSP on behalf of all covered employees ("Employer Contributions"), in addition to the Employee Contributions and without regard to any election by the employees.

11.     Pursuant to the CBA, the JIB may also collect employee loan payments due to the Union and certain Plans, and contributions to fund the operations of the JIB (collectively, the "Non-ERISA Plans").  Together, the loan payments, and the amounts owed to the Non-ERISA Plans are referred to as the "Non-ERISA Contributions."

12. Employee loan repayments may also be deducted from employees' paychecks. The E&C Fund is authorized to make loans to employees, for the purpose of paying for college tuition of a child of an employee, and the employees repay the amount of the loan by authorizing deductions from their paychecks.

13. The Employee Contributions and the Employer Contributions to the DSP are hereafter collectively referred to as "DSP Contributions." Employers are required to send all DSP Contributions and related payroll data to the DSP in care of Empower Retirement, Inc. ("Empower"), the third-party record-keeper and investment manager retained by the JIB for such purposes. All DSP Contributions are allocated to individual accounts in the name of the covered employees, who are entitled to direct the investment of their DSP Contributions from among various investment alternatives selected by the JIB in conjunction with Empower.

14. The signatory employer contributions to each of the ERISA Plans, except the DSP, the Union Assessment remittances, and the Non-ERISA Plan Contributions are collectively referred to as the "JIB Contributions." The JIB Contributions together with the DSP Contributions are hereafter collectively referred to as the "Required Contributions."

15. Respondent is a corporation incorporated under the laws of the State of New York. At relevant times, Respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Respondent maintains its principal executive office at 841 Rensselaer Avenue, Staten Island, New York 10309.

16. The New York State Department of State lists "THE CORPORATION," with an address of 1305C Travis Avenue, Staten Island, New York 10314 as the post office address to

which the Secretary of State shall maintain a copy of any process against Respondent served upon the Secretary of State by personal delivery.

17.    The last business address of Respondent known to Petitioner is 841 Rensselaer Avenue, Staten Island, New York 10309.

## THE ARBITRATION AWARD

18.    On or about May 15, 2019, Respondent executed a letter of assent in which it agreed to be bound by the terms of the collective bargaining agreement between the Union and the New York Electrical Contractors Association, Inc. (the "NYECA") and the Association of Electrical Contractors, Inc. (collectively, the "Associations") for the period, April 10, 2019 through April 13, 2022.  A copy of the May 15, 2019 letter of assent is annexed hereto as **Exhibit A**.  A copy of the CBA is annexed hereto as **Exhibit B**.

19.    The CBA was renewed for the period April 13, 2022 through and including April 9, 2025, by way of a Memorandum of Agreement (the "2022-2025 MOA"). A copy of the 2022-2025 MOA is annexed hereto as **Exhibit C**.

20.    The CBA requires Respondent to remit Required Contributions to the ERISA Plans, the Non-ERISA Plans, and to the Union for all work within the trade and geographical jurisdiction of the Union and to submit weekly payroll reports that provide the name, gross wages, and hours worked for each worker employed by the company on whose behalf Required Contributions are made. Ex. B, Art. II, Sections 3-9, 11-20; Ex. C.

21.    The CBA provides, inter alia, that "the parties to this Agreement hereby agree to and shall be bound by the provisions of the Plan and Trust documents and all amendments thereto as duly adopted by the respective Trustees, established and maintained for purposes of implementing the benefits provided for in this Agreement…as if such documents were

incorporated into and made a part of this Agreement, including but not limited to, the Policy for the Collection of Delinquent Contributions as duly adopted by the JIB and the requirements of ERISA. Exhibit B, Article II, Section 12(a); Exhibit C.

22.    The CBA further provides that an employer "shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damages of 20%, in the event of entry of judgment against the Employer in an action to collect delinquent contributions. *Id*.

23.    The JIB established a Policy for the Collection of Delinquent Contributions ("Collection Policy").  A copy of the Collection Policy is annexed hereto as **Exhibit D**.

24.    The JIB also established Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits ("Arbitration Procedures").  A copy of the Arbitration Procedures is annexed hereto as **Exhibit E**.

25.    The Collection Policy provides that if an employer fails to remit contributions and has not submitted payroll reports for such unpaid contributions, the JIB may "use a prior week's payroll report submitted by the employer to calculate the amount of Contributions due from the employer."  Exhibit D, Art. II.F.1.

26.    Pursuant to the Collection Policy, interest on delinquent contributions is to be calculated at the rate of eight percent (8%) for all ERISA Plans, except the NEBF which has adopted a 10% interest rate.  *See* Exhibit D, Amd. 4.

27.    The Collection Policy further provides that an employer shall be liable for liquidated damages and attorneys' fees and costs if legal action is commenced.  *See* Exhibit D, Art. II.E.2.

28.    The Arbitration Procedures provide that the arbitrator shall have the jurisdiction to determine any disputes between the "JIB against an Employer, related to the Employer's obligation

to contribute to the Funds, including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys' fees and costs … ."  Exhibit E, Section I.K and II.A.

29.     The Arbitration Procedures further provide that if the arbitrator finds in whole or in part for the JIB, the employer shall be liable for the arbitrator's fees and attorneys' fees and costs. Exhibit E, Section X.

30.     A dispute arose between the parties when Respondent failed to report and remit Required Contributions owed for payroll weeks ending January 1, 2020 through December 31, 2021.

31.     Pursuant to the Collection Policy and Arbitration Procedures, Petitioner initiated arbitration before the designated arbitrator, Thomas J. Lilly, Jr., Esq.  Petitioner noticed said arbitration by mailing a Notice of Intent to Arbitrate with Statement of Claims by electronic mail. A copy of the Notice of Intent to Arbitrate and Statement of Claims are annexed hereto as **Exhibit F**.

32.     As per the Arbitration Procedures, on February 16, 2023, the date paper submissions were due, Petitioner served Respondent, via electronic mail, with a copy of Petitioner's Memorandum of Law.  *See* Exhibit E, Section VI.A.  A copy of the Memorandum of Law is annexed hereto as **Exhibit G**.

33.     In its paper submission, Petitioner presented evidence that Respondent owed Required Contributions for payroll weeks ending January 1, 2020 through December 31, 2021 of $24,975.31; (2) interest of $3,456.44; (3) liquidated damages of $4,995.06[1]; (4) and attorneys' fees

---

[1] This amount is a clerical error.  As provided for by the documents governing the Funds and Section 502 of ERISA, liquidated damages shall be calculated as 20% of the principal deficiency.  In this case, JIB is entitled to liquidated damages in the amount of $4,959.06, which equals 20% of $24,975.31, as provided for in the March 1, 2023 Arbitration Award.

and costs of $2,866.67. A copy of JIB's breakdown of contributions owed submitted at the arbitration is annexed hereto as **Exhibit H**.

34. Thereafter, the arbitrator rendered his award, in writing, dated March 1, 2023, determining said dispute (the "Award"). A copy of the Award was delivered to Respondent. A copy of the Award is annexed hereto as **Exhibit I**.

35. The arbitrator found that Respondent was in violation of the terms of the CBA and ordered Respondent to pay the Funds the sum of $37,774.74, consisting of: (1) Audit Deficiencies of $24,795.31; (2) interest of $3,520.37; (3) liquidated damages of $4,959.06; (4) attorneys' fees and costs incurred by JIB prior to the issuance of the arbitration award of $3,100; and (5) the arbitrator's fee of $1,400. *See* Exhibit I.

36. Per the Award, "the JIB is entitled to recover legal fees and costs incurred in connection with this matter …" *See id.*

37. Respondent has made payments totaling $21,486.31 toward the Award, leaving a balance of $16,288.43 outstanding.

38. Respondent has otherwise failed to abide by the Award.

39. The Award has not otherwise been vacated or modified and no application for such relief is currently pending.

40. This petition is timely as it was filed within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award.

41. Petitioner is entitled to the reasonable attorneys' fees and costs expended in this matter pursuant to the CBA and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

42. Copies of V&A's contemporaneous time records, reflecting all time spent and all activities performed in the prosecution of this matter by its attorneys and staff, are annexed hereto as **Exhibit J.**

43. I, Adrianna R. Grancio ("AG" in the accompanying billing records), am a 2016 graduate of St. John's University School of Law and a partner at V&A. Since joining V&A in 2019, I have regularly represented multiemployer benefit plans in ERISA litigation. V&A billed my time at a rate of $410 per hour.

44. Jayden N. Peters ("JP" in the accompanying billing records) is a 2021 graduate of Widener University Commonwealth Law School. Mr. Peters is an associate at V&A. Mr. Peters is admitted to practice law in Pennsylvania and New Jersey federal courts and is awaiting admission to the New York bar. Prior to becoming an associate, Mr. Peters worked at V&A as a legal assistant. V&A billed his time at a rate of $310 per hour.

45. V&A billed the legal assistants' time at a rate of $155 per hour for work performed in connection with this action.

46. In my experience, the foregoing hourly rates are similar to or lower than the rates typically charged by attorneys of commensurate skill and experience in similar actions in the Southern and Eastern Districts of New York.

47. V&A's total billings in this matter amount to $3,501, reflecting 11.1 hours of work. *See* Exhibit J.

48. In addition, V&A will also advance $500 in court filing fees and service charges upon the filing of the instant petition. *Id.*

49. Accordingly, Petitioner is entitled to recover $4,001 in attorneys' fees and costs incurred in connection with this matter. *Id.*

**WHEREFORE,** Petitioner respectfully requests that this Court:

1. Confirm the Award in all respects;

2. Award judgment in favor of the Petitioner and against Respondent in the amount of $16,288.43 pursuant to the Award plus interest from the date of the Award through the date of judgment;

3. Award judgment in favor of the Petitioner and against Respondent in the amount of $4,001 in attorneys' fees and costs arising out of this petition; and

4. Award Petitioner such other and further relief as is just and proper.

Dated: New York, New York       Respectfully submitted,
January 2, 2024

                                   **VIRGINIA & AMBINDER, LLP**

                        By:    */s/Adrianna R. Grancio*
                                  Adrianna R. Grancio, Esq.
                                  40 Broad Street 7th Floor
                                  New York, New York 10004
                                  Telephone: (212) 943-9080
                                  Fax: (212) 943-9082
                                  *Attorneys for Petitioner*